**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re: Biringer's Shop and Service, LLC,

Case No. 22-20394-11

Debtor.

---

**United States Trustee's Motion to Dismiss or Convert**

---

Under 11 U.S.C. § 1112(b), the United States Trustee moves the Court to dismiss or convert this chapter 11 case for cause. The Court faces this issue:

> Cause exists if there is substantial loss to or diminution of the estate and no reasonable likelihood of rehabilitation, or failure to comply with court orders, file reports, and attend creditor meetings. Here, the debtor has little to no income, no plan to turn that around, and does not appear able to reorganize in chapter 11. And the debtor has not complied with court orders, filed reports, or attended all meetings. Does cause exist?

The answer is yes. The debtor appears to have filed this case to stop collection efforts by a judgment creditor that already wiped out much of its inventory, but since then has only lost money without reasonable likelihood of rehabilitation. In addition, the debtor has failed to comply with Court orders, failed to attend a § 341 meeting,

and failed to file financial reports. Cause exists, and dismissal would best serve the interests of creditors and the estate.

**Background**

Debtor Biringer's Shop & Service, LLC is a mobile locksmith that is owned by a husband and wife—51% by Paige Frasher and 49% by Michael Frasher. Mr. Frasher is the locksmith who runs the business operations. Mrs. Frasher is a bookkeeper or accountant at Central Bag Company.

According to Mr. Frasher's testimony during the first § 341 meeting of creditors, he worked for Smallwood Lock & Supply for 14 years, but in 2012, he was fired. Mr. and Mrs. Frasher purchased Biringer's, which had been a customer of his when he worked at Smallwood. At the time, Biringer's had a retail shop in Leavenworth, where it did locksmithing and trophy engraving while also selling firearms and ammunition.

Around 2014, Smallwood obtained a judgment against Mr. Frasher. Mr. Frasher described Smallwood's claim as him having enriched himself by selling Smallwood's property. He has not paid that judgment.

In 2019, not long after the State of Kansas seized much of Biringer's property for unpaid taxes, the Frashers shut down the store and transitioned to being a mobile locksmith.

In 2020 or 2021, Smallwood sent interrogatories and possibly a garnishment order to Biringer's in its attempts to collect its judgment against Mr. Frasher. Biringer's did not respond. Mr. Frasher was not represented and says he failed to understand the consequences of ignoring the filings. As a result, Smallwood obtained a judgment against Biringer's for at least part of what Mr. Frasher owes.

In November 2021, the county sheriff seized Biringer's van—including all the tools and inventory inside—as part of Smallwood's execution of the judgment. That same day, Mr. Frasher made contact with Hazelton & Laner, and ultimately hired Joel Laner and the law firm. The firm began representing both Biringer's and Mr. Frasher in the state court litigation with Smallwood. Eventually, the van was returned to Mr. Frasher because there is a lienholder, but Smallwood kept the tools and inventory from the van.

Mr. Frasher and Biringer's have not been able to resolve the Smallwood judgment against them. On May 4, 2022, Biringer's filed

its chapter 11 petition in bankruptcy.[1] According to its schedules, Biringer's owes about $15,000 in taxes, $48,000 to Smallwood, and nearly $14,000 in other unsecured debt.[2] Assets at that time were a small sum of cash in the bank and A/R, inventory and office equipment, and a van worth $32,443 on which the company owes 23,000.[3] According to Mr. Frasher, he does not take a salary or cash draw from Biringer's.

Although Biringer's has not filed a monthly operating report yet, the financial documents it submitted in response to the United States Trustee's inquiries are illuminating. According to the company's profit and loss statement for 2021, it had total net income in 2021 of $13,018.62, or an average of $1,084.89 per month. The debtor provided financials that show net income for April was about $1,000. During the first § 341 meeting of creditors, Mr. Frasher said that sounded like a typical month lately, so the situation has not improved. In fact, Biringer's profit and loss statement for May 2022

[1] Doc. #1.

[2] *Id.* at 12, 14.

[3] Doc. #1-4 at 1-5, 9.

indicates net income of a mere $72.75. And that's even with A/R being reduced from $7,524.34 to $2,439.35.[4]

On May 19, the debtor's proposed counsel, Hazelton & Laner, filed a motion for approval of monthly compensation under the local rule.[5] In that motion, the law firm says it "anticipates that it will expend a significant amount of time on this case."[6] The law firm had no retainer left when it filed the bankruptcy petition.

Biringer's is starved for cash, its revenue stream is a trickle, and it has no cushion to soften the blow. The debtor's proposed attorneys had already exhausted their retainer by the time of filing, so continued efforts at reorganizing this business will exacerbate the tension among the estate, its creditors, and administrative claimants. At the outset of the case, the debtor is already on the cusp of administrative insolvency.

---

[4] *See* doc. #1 at 2 ln. 11 at filing. Updated A/R as of May 19 supplied by the debtor to the United States Trustee's Office.

[5] Doc. #22.

[6] *Id.* at ¶3.

During this bankruptcy, the Court issued an order scheduling the chapter 11 small business debtor status conference under § 1188(a).[7] In that order, the Court set the conference on June 23, and ordered the debtor to file the status report required by § 1188(c) no later than 14 days before then, or by June 9. The debtor did not file the status report. And neither a representative of the debtor or debtor's proposed counsel appeared at the status conference with the Court on June 23.

**Argument**

Section 1112 of the Bankruptcy Code governs the conversion or dismissal of a chapter 11 case, and "is intended to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation."[8] It requires a court, upon a finding of cause, to convert a chapter 11 case to chapter 7 or dismiss the case.[9]

---

[7] Doc. #18.

[8] *Lynch v. Bernard*, 590 B.R. 30, 35 (E.D.N.Y. 2018) (citing *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (S.D.N.Y. 1995).

[9] 11 U.S.C. § 1112(b)(1).

The Code lists several grounds for cause,[10] but those are illustrative rather than exhaustive.[11] A court may consider other grounds as they arise and may use its equitable powers to reach an appropriate result.[12] Indeed, while "cause" is not specifically defined anywhere in the Bankruptcy Code, courts have interpreted it flexibly to include "any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process."[13] Causes exists in this case for at least four separate and independent reasons, each of which is sufficient grounds for dismissal.

### A. Cause exists for failure to comply with the Court's orders.

Under § 1112(b)(4)(E), a court must convert or dismiss a case when the debtor fails to comply with an order of the court. The debtor has failed to comply with orders of this Court. The debtor did not file a status report as ordered, and the debtor did not appear for the

---

[10] *Id.* § 1112(b)(4).

[11] *In re AdBrite Corp.*, 290 B.R. 209, 217 (Bankr. S.D.N.Y. 2003).

[12] *In re Neighbors*, No. 11-21003, 2015 Bankr. LEXIS 4308, at *21 (Bankr. D. Kan. Dec. 21, 2015).

[13] *In re Morris*, 155 B.R. 422, 426 (Bankr. W.D. Tex. 1993) (citing *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).

status conference set by this Court. Cause exists under § 1112(b)(4)(E).

### B. Cause exists for failure to attend the meeting of creditors.

Under § 1112(b)(4)(G), a court must convert or dismiss a case when the debtor failures to attend a meeting of creditors under § 341. Although the debtor's representatives attended the first meeting of creditors, no one from the debtor attended the continued § 341 meeting on June 22. Cause exists under § 1112(b)(4)(G).

### C. Cause exists for continuing diminution of the estate without a reasonable likelihood of rehabilitation.

Under § 1112(b)(4)(A), a court must convert or dismiss a case when there is continuing loss to or diminution of the estate and an absence of a reasonable likelihood of rehabilitation. The two components that courts test are (1) whether, after the commencement of the case, the debtor continues to experience a negative cash flow or declining asset values; and (2) whether there is any reasonable likelihood that the debtor or some other party will be able to stem the

debtor's losses and place the enterprise back on a solid financial footing within a reasonable amount of time.[14]

Here, that test does not balance in Biringer's favor. Less than two months into bankruptcy, the debtor is losing money. Despite recovering much of its A/R, the debtor's most recent monthly net incomes are $1,000 and $72, respectively. That is not enough to pay administrative expenses of its proposed counsel and the subchapter V trustee, let alone fund a plan. Mr. Frasher testified at the § 341 meeting that the company uses two bank accounts, transferring back and forth before bankruptcy to avoid further seizures.

The debtor appears to be stuck. The conditions that prompted it to file for bankruptcy in the first place remain unabated. Its cash flow is poor, even while delaying some expenses during bankruptcy. It has not made any discernible progress with its main judgment creditor since the creditor's seizure of assets in November 2021, and it is a poor fit for a subchapter V system designed to proceed on a fast track.

[14] *In re Western States, Inc.*, No. 17-20041, 2018 Bankr. LEXIS 247, at *13 (Bankr. D. Wyo. Jan. 30, 2018) (citations omitted).

The hard truth is that Biringer's no longer appears to be a viable business. Cause for dismissal exists under § 1112(b)(4)(A).

**D. Cause exists for failure to file operating reports.**

Under § 1112(b)(4)(F), an unexcused failure to report or file required information constitutes cause for dismissal or conversion. Section 704(a)(8)—made applicable in chapter 11 by §§ 1106(a)(1) and 1107(a), and by Bankruptcy Rule 2015(a)(3)—requires a debtor-in-possession to file periodic financial reports. Operating reports and the financial disclosures they contain "are the life-blood of the chapter 11 process and are more than mere busy work.... The reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements, and they serve as a litmus test for a debtor's ability to reorganize. Thus, non-compliance is not a mere technicality."[15] Nor does belated compliance satisfactorily excuse a debtor's failure to satisfy its duties in chapter 11. "Filing

[15] *In re Whetten*, 473 B.R. 380, 383–84 (Bankr. D. Colo. 2012) (citing *Matter of Berryhill*, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991)).

catch-up reports is akin to locking the barn doors after the horses have already gotten out."[16]

As a practical matter, failure to file these reports impairs the ability of the Court, creditors, and other interested parties to monitor the debtor's operations. Without the reports, it is impossible to determine whether the debtor has—among other things—remained current on post-petition obligations, including taxes and payroll; made improper payments to professionals or pre-petition creditors; or remained current on its monthly insurance premiums. Refusal or inability to provide financial disclosure "sounds the death knell of a chapter 11 case."[17]

Here, the debtor has not filed a monthly operating report for May, the only month due so far. Cause exists under § 1112(b)(4)(F).

---

[16] *Id.* at 383 (citing *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. 707, 716–17 (Bankr. D. Md. 2011)); *In re Woodale Props., Ltd.*, 2017 U.S. Dist. LEXIS 26538, at *16 (noting bankruptcy court's rejection of debtor's offer to bring reports up to date and assertion that "a six-month-old monthly operating report is an insult to the bankruptcy system").

[17] *In re Tornheim*, 181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995).

### E. Dismissal is the appropriate remedy.

Next, then, the Court must determine whether the case should be converted to chapter 7 or dismissed, whatever is in the best interests of creditors and the estate. The Code does not define "best interests" in this context, but the standard implies balancing interests in case-by-case analysis.[18] Ultimately, it is a matter for sound judicial discretion.[19]

Dismissal is the most appropriate option here. Conversion would saddle a chapter 7 trustee with obligations but no assets to fund them. The Court should find dismissal to be the most suitable choice.

## Conclusion

Chapter 11 is an ill fit for Biringer's. There appears to be no chance for rehabilitation to be had here. Bankruptcy appears to be simply a delay tactic. And the debtor has not taken its responsibilities serious enough as it has missed a Court hearing and § 341 meeting,

---

[18] *In re Neighbors*, No. 11-21003, 2015 Bankr. LEXIS 4308, at *28 (Bankr. D. Kan. Dec. 21, 2015) (citations omitted).

[19] *In re Dooley's Water & Energy Sols., Inc.*, 2016 Bankr. LEXIS 1852, at *5 (citing *In re Neighbors*, No. 11-21003, 2015 Bankr. LEXIS 4308, at *28 (Bankr. D. Kan. Dec. 21, 2015)).

not complied with Court orders, and not filed required documents.

For these reasons, the Court should dismiss the case.

Respectfully submitted,

ILENE J. LASHINSKY,
UNITED STATES TRUSTEE

By: *Richard A. Kear*, #20724
Trial Attorney
301 N. Main St., Suite 1150
Wichita, KS 67202
316-269-6213 (phone)
Richard.Kear@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on June 29, 2022, a true and correct copy of this **Motion to Dismiss or Convert** was electronically filed with the Court using the CM/ECF system, which sends notification to all parties of interest participating in this case through the CM/ECF system.

In addition, a copy is being sent by U.S. Mail to the below creditors for whom no one has entered an appearance:

Smallwood Lock & Supply
120 Abbie Avenue
Kansas City, Kansas 66103

IRS
1973 Rudon White Boulevard
Ogden, Utah 84201

Paypal Working Capital
P.O. Box 45950
Omaha, NE 68145-0950

Kansas Department of Revenue
Scott State Office Building
120 S.E. 10th Avenue Topeka, Kansas 66612-1103

Judith Frasher
5842 N. 131st
Kansas City, Kansas 66109

Paypal Credit
P.O. Box 965003
Orlando, FL 32896-5003

Capital One
Attn: General Correspondence
P. O. Box 30285
Salt Lake City, Utah 84130

By: *Richard A. Kear*